IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALAL ALI CHAMMOUT,<br><br>             Petitioner,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent.<br>_____ | No. CV-F-08-1536 OWW<br>(No. CR-F-06-426 OWW)<br><br>MEMORANDUM DECISION AND<br>ORDER DENYING PETITIONER'S<br>MOTION TO VACATE, SET ASIDE<br>OR CORRECT SENTENCE PURSUANT<br>TO 28 U.S.C. § 2255 AND<br>DIRECTING CLERK OF COURT TO<br>ENTER JUDGMENT FOR<br>RESPONDENT AND TO CLOSE THIS<br>CASE |

On October 10, 2008, Petitioner Talal Ali Chammout timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  On November 27, 2008, Petitioner filed a memorandum of points and authorities in support of his Section 2255 motion.  The United States was ordered to respond and Petitioner to file a reply.  All briefing is now complete.

Petitioner was indicted on December 21, 2006 for one count of being a felon in possession of a firearm in violation of 18

1

U.S.C. § 922(g)(1); the Indictment alleges that "on or about December 7, 2006 in the County of Tulare, State and Eastern District of California, after having been previously convicted, on or about June 27, 1995, of Assault with Force Likely to Produce Great Bodily Injury, in violation of California Penal Code Section 245(a)(1), in the Superior Court of California, County of Tulare, a crime punishable by a term of imprisonment exceeding one year, did knowingly possess firearms, including, but not limited to, three (3) AK-47 assault-type rifles, one (1) Tec 9 pistol, and five (5) Beretta pistols, in and affecting interstate commerce, in that all said firearms had been shipped and transported in interstate commerce ...."  Petitioner was also indicted for conspiracy to possess stolen government property in violation of 18 U.S.C. §§ 371 and 641.

On June 6, 2007, Petitioner, represented by Roger Nuttall, Esq., pleaded guilty pursuant to a written Plea Agreement to be a felon in possession of firearms in violation of Section 922(g)(1).  The Plea Agreement provided:

> Defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, conviction and sentence. This waiver of appeal includes, but is not limited to, an express waiver of defendant's right to appeal his plea, conviction and sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, and defendant further agrees not to contest his plea, conviction and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255.

The Plea Agreement set forth the elements of the crime to which

2

Petitioner pleaded guilty:

> The elements of the crime of Felon in Possession of a Firearm are:
>
> First, the defendant knowingly possessed a firearm,
>
> Second, the firearm had been shipped or transported in interstate commerce; and
>
> Third, at the time the defendant possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

Petitioner agreed to the following factual basis for his guilty plea:

> Beginning at a time unknown but no later than June 1, 2004 and continuing to June 7, 2006, the defendant knowingly possessed firearms which firearms had been shipped in interstate and foreign commerce.
>
> Specifically, on or about December 7, 2006, the defendant was in possession of five (5) Beretta pistols which firearms had been shipped and transported in interstate and foreign commerce.  The defendant possessed these firearms because on December 7, 2006, the defendant had purchased these firearms from a cooperating witness for $1,000.  At the time of the purchase the defendant believed that the firearms were stolen United States government property.
>
> Also on December 7, 2006, the defendant knowingly possessed approximately forty (40) other firearms including three AK 47's, one TEC 9, and one Mini 14, which described firearms were semiautomatic firearms capable of accepting a large capacity magazines [sic] in that the firearm had attached to it a magazine or similar device that could accept 15 or more rounds of ammunition.  These described firearms had also been shipped in interstate and foreign commerce.
>
> On or about December 10, 2004, the defendant

purchased two sets of night vision goggles,
one small arms protective insert, two
chemical suits, two ballistic vests, one set
of lower torso fragmentation armor and four
pairs of hot weather combat boots, believing
that such property was stolen United States
government property.

On or about June 27, 1993, the defendant was
convicted of a felony for Assault with Force
Likely to Cause Great Bodily Injury, in
violation of California Penal Code Section
245(a)(1), in Tulare County Superior Court,
California such a violation being a crime of
violence, punishable by a term of
imprisonment exceeding one year.

On October 17, 2007, Petitioner was sentenced to a 78-month

term of imprisonment and a 36-month term of supervised release,

and a $10,000 fine.

Petitioner asserts that he was denied the effective

assistance of counsel on the grounds that counsel failed to

advise him that his state conviction is not a felony under

applicable law; that counsel never informed Petitioner that the

firearms listed in Count One of the Indictment must have been

shipped in interstate commerce; that defense counsel told

Petitioner at the change of plea proceedings that Petitioner

should just agree with all of the questions asked of him by the

judge; and that defense counsel failed to argue that Petitioner

could not afford to immediately pay the fine of $10,100 based on

his financial resources and earnings ability.

A.   **Effect of Waiver in Plea Agreement**.

Petitioner specifically waived his right "to contest his

plea, conviction and sentence in any post-conviction proceeding,

4

including but not limited to a proceeding under 28 U.S.C. §
2255."

Because a plea agreement is contractual in nature, its plain
language will be enforced if the agreement is clear and
unambiguous on its face.  *United States v. Jeronimo*, 398 F.3d
1149, 1153 (9th Cir.), *cert. denied*, 546 U.S. 883 (2005).  The
only claims that cannot be waived are claims that the waiver
itself was involuntary or that ineffective assistance of counsel
rendered the waiver involuntary.  *See Washington v. Lampert*, 422
F.3d 864, 871 (9th Cir. 2005), *cert. denied*, 547 U.S. 1074
(2006).

Petitioner makes no specific claim that the waiver of his
right to bring a Section 2255 motion was involuntary.  However,
his claim of ineffective assistance of counsel on the ground that
his state conviction was not a felony under California law and,
therefore, not subject to Section 922(g)(1) may be viewed as
ineffective assistance of counsel rendering the waiver
involuntary.  Further, this claim for relief raises the specter
of actual innocence of the crime of conviction.  Finally, the
United States in its opposition to the Section 2255 motion did
not assert that the waiver in the plea agreement precluded
Petitioner's motion.

For these reasons, the Court addresses Petitioner's claims
notwithstanding the waiver of his right to bring a Section 2255
motion in the plea agreement.

B.  <u>Governing Standards</u>.

1       To establish an ineffective assistance of counsel claim,

2   Petitioner must show: (1) the representation was deficient,

3   falling "below an objective standard of reasonableness"; and (2)

4   the deficient performance prejudiced the defense.  *Strickland v.*

5   *Washington*, 466 U.S. 668, 687 (1984).  The Court need not

6   evaluate both prongs of the *Strickland* test if the petitioner

7   fails to establish one or the other.  *Strickland*, *id.* at 697;

8   *Thomas v. Borg*, 159 F.3d 1147, 1152 (9th Cir.1998), *cert. denied*,

9   526 U.S. 1055 (1999).

10      Under the first prong, Petitioner must show that "counsel

11  made errors so serious that counsel was not functioning as the

12  'counsel' guaranteed the defendant by the Sixth Amendment."

13  *Strickland*, 466 U.S. at 687.  "A convicted defendant making a

14  claim of ineffective assistance must identify the acts or

15  omissions of counsel that are alleged not to have been the result

16  of reasonable professional judgment."  *Id.* at 690.  "A fair

17  assessment of attorney performance requires that every effort be

18  made to eliminate the distorting effects of hindsight, to

19  reconstruct the circumstances of counsel's challenged conduct,

20  and to evaluate the conduct of counsel's performance at the

21  time."  *Id.* at 689.  The proper inquiry is whether, "in light of

22  all the circumstances, the identified acts or omissions were

23  outside the wide range of professionally competent assistance."

24  *Id.*  The court must apply "a heavy measure of deference to

25  counsel's judgments," and "must indulge a strong presumption that

26  counsel's conduct [fell] within the wide range of reasonable

professional assistance." *Id.* at 690-691.  "The relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir.1988).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989).  A decision to waive an issue where there is little or no likelihood of success and concentrate on other issues is indicative of competence, not ineffectiveness.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989).

To meet the prejudice requirement, the petitioner must demonstrate that errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693.  "It is [also] not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*  "Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.*  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.  In order to prevail on an ineffective assistance of counsel claim in connection with a guilty plea, "the [petitioner] must show that there is a reasonable

probability that, but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial." *Hill
v. Lockhart*, 474 U.S. 52, 56-57 (1985).

C.   <u>State Conviction</u>.

18 U.S.C. § 922(g)(1) makes it unlawful for any person "who
has been convicted in any court of, a crime punishable by
imprisonment for a term exceeding one year" "to ship or transport
in interstate or foreign commerce, or possess in or affecting
commerce, any firearm or ammunition; or to receive any firearm or
ammunition which has been shipped or transported in interstate or
foreign commerce."

Petitioner pleaded nolo contendere on June 27, 1995 in the
Tulare County Superior Court to Count Two, a violation of
California Penal Code § 245(a)(1):[1]

> Any person who commits an assault upon the
> person of another with a deadly weapon or
> instrument other than a firearm or by any
> means of force likely to produce great bodily
> injury shall be punished by imprisonment in
> the state prison for two, three, or four
> years, or in a county jail for not exceeding
> one year ....

California Penal Code § 17 provides:

> (a) A felony is a crime which is punishable
> with death or by imprisonment in state
> prison.  Every other crime or public offense
> is a misdemeanor except those offenses that
> are classified as infractions.

---

[1]The record before the Court establishes that Petitioner was
also convicted of Count Three, a felony violation of California
Penal Code § 236 (false imprisonment), and Count 6, a misdemeanor
violation of California Penal Code § 242 (battery).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**(b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:**

**(1) After a judgment imposing a punishment other than imprisonment in the state prison.**

**...**

**(3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor.**

Because Section 245(a)(1) does not define the nature of the crime either as a felony or a misdemeanor, but merely specifies the punishment, it is known under California law as a "wobbler". *See People v. Superior Court (Perez)*, 38 Cal.App.4th 347, 355 (1995). Therefore, the test of the nature or status of the offense becomes the actual punishment imposed." *Id.* "[W]here the offense is alternatively a felony or misdemeanor (depending upon the sentence), and the court suspends pronouncement of judgment or imposition of sentence and grants probation, the offense is regarded as a felony and if no judgment is pronounced it remains a felony." *People v. Esparza*, 253 Cal.App.2d 362, 364-365 (1967). The fact that a defendant is ordered to serve time in the county jail does not change this result because the confinement was a condition of probation and did not constitute a sentence within the meaning of Penal Code § 17. *Id. See also United States v. Robinson*, 967 F.2d 287, 293 (9th Cir.1992):

> The court granted probation and suspended the imposition of sentence.  Clearly, '[a]n order granting probation is not a judgment.' ...  Furthermore, when a sentencing court grants probation after a conviction, it may suspend the imposition of sentence, in which case no judgment of conviction is rendered, or it may impose sentence and order its execution to be stayed.  In the latter case only, a judgment of conviction is rendered.

Attached to Respondent's brief is a copy of the June 17, 1995 minute order in *People v. Chammout*, Case No. 95-35976, Tulare County Superior Court reflecting Petitioner's nolo contendere plea to Count Two, a violation of Section 245(a)(1).  The minute order states: "Indicated sentence <u>Felony Probation. Serve up to 365 days in-custody</u>."  Also attached to Respondent's brief is a copy of a memorandum from the Tulare County Superior Court to the Tulare County Probation Department dated June 27, 1995 *People v. Chammout*, Case No. 95-35976, reporting that Petitioner pleaded nolo contendere to "Felony Ct. 2 - 245(a)(1) PC" and that the "[i]ndicated sentence: Felony Probation Serve Up to 365 Days."  At Petitioner's sentencing on September 14, 1995 for his conviction of violating Section 245(a)(1), Tulare Superior Court Judge Moran stated:

> THE COURT: This is the time set for imposition of sentence in this matter.  I have reviewed the report of the probation officer.  Do you have any comments Miss Henry?
>
> MS. HENRY: Right.  Depending upon what the Court chooses, if the Court chooses to grant probation, even though I was not the trial attorney on the case, I have read the file and feel that this defendant should receive the maximum local time in custody for the

conduct that he engaged in and the charges that he was convicted of.

THE COURT: Mr. Rothbaum?

MR. ROTHBAUM: Your Honor, I had a distinct impression that we were talking about a probationary sentencing.

THE COURT: I am going to impose probation in this matter.  A state prison sentence is inappropriate because he hasn't previously suffered any incarceration as a result of his violent conduct.  He is a very violent, dangerous person.

MR. ROTHBAUM: Well, your Honor, I think these are difficult times for a person to be running a retail business.  And he has had to endure a lot of harassment and even criminal conduct.  And he is, you know, he is really just a businessman out there trying to make a living running a market.  These are dangerous times to be running that kind of a market. And unfortunately this episode here has put him in a position now where he is threatened with losing not just freedom for a period of time but his business licenses as well.  I mean his entire livelihood is on the line here.

I would request that ... both these cases sent down as misdemeanors.  So he would be in a position not to lose his business licenses ....

THE COURT: The Court's primary concern is treating this matter severely enough so that we never have any violence committed by this man in the future.  Now, he can never own a firearm again.  And the Court is going to impose a sentence that's going to cause him enough inconvenience as to likely deter him from violations in the future.

His application for probation is granted. Imposition of sentence is suspended for a period of five years on the following terms and conditions.

He will serve 365 days in the custody of the

11

1

2

                    Tulare County Sheriff with credit for one day
                    served ....

3

                    ...

4

                    ... He is advised that he is not to possess
                    any firearm for a period of ten years.  Well
                    pursuant to 12021(C)(1).  This is in addition
                    to the prohibition that he never possess a
                    firearm as a result of being a felon.

5

6

7

Attached to Petitioner's motion as Exhibit D is the Tulare County

8

Superior Court September 14, 1995 minute order of the sentencing

9

proceedings. The minute order states: "Court finds offense to be:

10

[¶] Ct.2-Fel. to wit: Viol. of Penal Code section 245(a)(1) -

11

Assault."  The minute order reflects that Petitioner was granted

12

probation for a period of five years subject to the additional

13

conditions listed on page 2 of the minute order and subject to

14

serving 365 days in the Tulare County Jail.  One of the

15

additional conditions listed on page 2 of the minute order is

16

that "Defendant shall not possess any firearm or other

17

concealable weapon ~~during ther term of probation~~ for ten years

18

pursuant to 12021(c)(1) PC."

19

      Petitioner argues this record indicates that the sentencing

20

judge was inconsistent.  Petitioner claims that the sentencing

21

judge never stated on the record whether he was granting or

22

denying Petitioner's motion to reduce the charge to a

23

misdemeanor.  Petitioner contends that the sentencing judge's

24

reference to Penal Code § 12021(c)(1) is inconsistent with

25

26

                              12

treatment of the conviction as a felony.[2]

Petitioner cites *People v. Mitchell*, 24 Cal.4th 181, 185-186 (2001), that "[a]n abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest of summarize."  Petitioner argues:

> In this case, the judge never stated that he was denying Chammout's motion to reduce the offense to a misdemeanor and he never said that he was sentencing Chammout to 'felony probation' ... The minutes, on their own, reflect an order that Count 2 is a felony. The minutes, therefore, are inconsistent with the oral ruling.  In such a case, the oral ruling from the judge should control.  The minutes, however, are consistent with the oral ruling that Chammout be banned from possessing a firearm for ten years. Therefore, both the oral ruling and the minute order consistently suggest that the offense should be treated as a misdemeanor and Chammout should be banned from possessing firearms for ten years while they inconsistently suggest that the offense should be treated as a felony.

Petitioner's arguments are without merit.  Section 17(b)(3) provides that a "wobbler" is a misdemeanor "[w]hen the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."  Here, the sentencing court stated: "Now, he can never own a firearm again."  As a condition of

---

[2]Penal Code § 12021(c)(1) makes guilty of a public offense the possession of a firearm within ten years "any person who has been convicted of a misdemeanor violation of section ... 245 ...."

probation, the sentencing court did state: "He is advised that he is not to possess any firearm for a period of ten years.  Well pursuant to 12021(C)(1)."  However, the sentencing judge immediately qualified that statement: "This is in addition to the prohibition that he never possess a firearm as a result of being *a felon*." [Emphasis added].  The transcript of the sentencing proceedings expressly establishes that the sentencing court treated Petitioner's conviction as a felony.  The sentencing court never declared the conviction to be a misdemeanor and explicitly referred to Petitioner as a felon.

After imposition of sentence in September 1995, Petitioner appealed his convictions to the Fifth District Court of Appeal. Petitioner asserts that the Fifth District reversed his conviction of Count Three (false imprisonment), affirmed his convictions of Counts Two (violation of Section 245(a)(1) and Six (misdemeanor battery), and remanded to the Tulare County Superior Court for resentencing.  Attached to Petitioner's reply brief is a copy of the March 10, 1997 Tulare County Superior Court minute order reflecting Petitioner's resentencing by Judge Moran upon remand.  The minute order states:

> ORDER: Motion to withdraw plea.
>
> Pursuant to Remittitur filed on February 3, 1997 the following is ordered:
>
> Ct. 3 is dismissed.
>
> Resentencing as to Ct. 3 & 6
>
> Probation is granted - 36 months.

14

1
                    Defendant ordered to serve 360 Days in the
                    Tulare County Jail.
2
                    Defendant given credit for 360 days actual
3                   time served.

4                   ...

5                   Submit to a search, only for the purpose of
                    discovering a weapon.
6

Petitioner's counsel for the Section 2255 motion avers that no
7
transcripts of the March 10, 1997 resentencing hearing are
8
available because the court reporter destroyed her notes after
9
ten years.  Petitioner was represented at the resentencing
10
hearing by James Heusdens, who has since died.
11
             Petitioner asserts:
12
                    If it is assumed that Chammout was sentenced
13                  to felony probation at the first sentencing
                    in September 1995 after his counsel requested
14                  misdemeanor probation, it is likely that his
                    counsel again requested misdemeanor probation
15                  at the resentencing hearing in March 1997.
                    Under Penal Code § 17, a person convicted of
16                  a wobbler but admitted into probation is a
                    felon only provisionally, and he can become a
17                  person convicted of a misdemeanor upon the
                    determination of a trial court to reduce the
18                  offense.  It is therefore likely that the
                    judge granted misdemeanor probation under
19                  17(b)(1).  Of course, it is just as likely
                    that he did not.  However, there is no clear
20                  record of the proceedings because the minute
                    order does not specify what was ordered and
21                  no transcript of the hearing exists.  The
                    record of the first sentencing contains
22                  inconsistencies in both the oral and written
                    orders and the record of the second
23                  sentencing makes no orders whether count 2
                    was charged as a felony or a misdemeanor.
24                  Therefore, the facts do not support the
                    conclusion that count 2 was charged as a
25                  felony to qualify as a predicate offense
                    under section 922(g)(1).  To the contrary,
26                  the record suggests that the offense was

                                   15

1                      treated as a misdemeanor because Chammout was
specifically ordered not to possess firearms
for 10 years and the judge never consistently
2                      orally pronounced that he was ordering felony
3                      probation versus misdemeanor probation.

4        However, as established above, the sentencing judge, who was

5 also the resentencing judge, did not declare Petitioner's

6 conviction to be a misdemeanor, stated that "Now, he can never

7 own a firearm again," and ruled as a condition of probation:

8                      He is advised that he is not to possess any
firearm for a period of ten years.  Well
9                      pursuant to 12021(C)(1).  This is in addition
to the prohibition that he never possess a
10                    firearm as a result of *being a felon*.

11 [Emphasis added].

12        The record of the resentencing hearing provided by

13 Petitioner does not suggest that the resentencing judge reached

14 any other conclusion and there is nothing in that record to

15 suggest that the judge converted Petitioner's felony conviction

16 to a misdemeanor.

17        In January 1999, Petitioner, again represented by Mr.

18 Heusdens, filed an application for expungement of criminal

19 conviction pursuant to California Penal Code § 1203.4 in the

20 Tulare County Superior Court.[3]  In this application, Mr. Heusdens

21

22                [3]California Penal Code § 1203.4(a) provides:

23                    In any case in which a defendant has fulfilled
the conditions of probation for the entire
period of probation, or has been discharged
24                    prior  to  the  termination  of  the  period  of
probation,  or  in  any  other  case  in  which  a
25                    court,  in  its  discretion  and  in  the  interests
of  justice,  determines  that  a  defendant  should
26                    be  granted  the  relief  available  under  this

refers to Petitioner's "felony conviction" but then asserts that "[t]he only remaining probationary condition is that he may not possess a firearm for a period of 10 years from the date of his sentencing."  However, the application is based on California Penal Code § 12021(c)(2).  Section 12021(c)(2) provides that the "prohibition in this paragraph may be reduced, eliminated, or conditioned as provided in paragraph (2) or (3)."  Attached to Petitioner's reply brief is a copy of the January 19, 1999 minute order of the Tulare County Superior Court Judge Moran:

> ORDER: Petition granted. Defendant is allowed to withdraw plea of guilty.  Defendant enters a plea of Not Guilty.  Court dismissed information.

Petitioner construes this Order as permitting Petitioner to possess firearms again.  Petitioner argues:

> section, the defendant shall, at any time after the termination of the period of probation ... be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty ... [and] the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted ... However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed ....
>
> Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Section 12021.

17

> The Court would have had the authority to make such a ruling if Chammout's conviction had been deemed a misdemeanor.  As a felon, Chammout would have been barred from possessing firearms during his lifetime, without a government pardon.  Otherwise, it wouldn't make sense why Chammout's counsel would file a petition seeking such relief or why the Court would have granted such relief by approving the petition.
>
> Therefore, the facts surrounding the January 19, 1999 hearing suggest that Chammout's 1995 conviction was treated as a misdemeanor under Section 17(b)(3).  Not only was it treated as a misdemeanor, but Chammout was also specifically given a right to possess firearms again, and that he was wrongfully charged with being a felon in possession under USC Section 922(g) in 2006.

Petitioner's contention that the granting of his application pursuant to Section 1203.4(a) necessarily meant that the Tulare County Superior Court judge treated or reduced his conviction as a misdemeanor and permitted him to possess or carry firearms again is not borne out by the record.  Section 1203.4 allows a court to dismiss a conviction, whether it is a felony or a misdemeanor. *See Gebremicael v. California Com. on Teacher Credentialing*, 118 Cal.App.4th 1477, 1489 (2004); *see also People v. Frawley*, 82 Cal.App.4th 784 (2000)(Defendant whose conviction was set aside pursuant to section 1203.4 remained subject to prosecution for possession of a firearm by an ex-felon).

Petitioner has not demonstrated ineffective assistance of counsel.  The record presented by Petitioner does not establish that Petitioner's conviction for violation of Section 245(a)(1) was ever declared by the sentencing judge, Judge Moran, to be a

misdemeanor.  The record demonstrates that it was treated as a felony.  Consequently, Mr. Nuttall's alleged failure to investigate and contend that Petitioner's Section 245(a)(1) conviction did not qualify as a conviction within the meaning of Section 922(g)(1) was not ineffective assistance of counsel.

Petitioner's motion on this ground is DENIED.

D.  **Failure to Advise Petitioner of Interstate Commerce Element.**

Petitioner's claim that he was denied the effective assistance of counsel because of counsel's failure to advise him of the interstate commerce requirement for a violation of Section 922(g)(1) and that Mr. Nuttall "told me to just agree with all of the questions asked me by the judge" is belied by the record. Petitioner was placed under oath during the change of plea proceedings and advised by the Court that any false answer could subject him to a prosecution for perjury.  Petitioner stated that he understood.  Petitioner stated under oath that he had read the plea agreement before he signed it, discussed it with Mr. Nuttall, and understood the Plea Agreement.  The Plea Agreement specifically sets forth the interstate commerce element of Section 922(g)(1).  The Court reviewed the elements of Section 922(g)(1) with Petitioner, including the interstate commerce requirement and Petitioner, still under oath, stated that he understood the elements.  Whether or not Mr. Nuttall did not previously advise Petitioner of the interstate commerce requirement before reviewing the plea agreement with Petitioner

19

and the change of plea proceedings, Petitioner was made aware of this element during the change of plea proceedings.

Petitioner's motion for relief on this ground is DENIED.

E.   Imposition of Fine.

Petitioner claims he was denied the effective assistance of counsel because of counsel's failure to argue that Petitioner could not afford to pay the $10,000 fine immediately due to his financial situation or to argue that there was insufficient evidence that Petitioner could afford to pay a $10,000 fine. Petitioner avers that he "cannot immediately or otherwise pay a fine of $10,100. [sic] Because of these criminal proceedings, I no longer have any money or personal property."

The revised Presentence Investigation Report dated July 10, 2007 stated:

> **Employment Record**:
>
> 61.   In 1987, the defendant opened a convenience store, Trucker's Mini Mart, in Porterville, California.  He realized an approximate income of $80,000 annually.  The defendant noted he sold the store in June 2003, but took it back in 2006, due to the buyers defaulting on their loan.
>
> 62.   The defendant also owned and operated Trucker's Oil in Porterville, California, selling gasoline and gasoline products both at the retail and wholesale level.  His income from this business varied between $70,000 and $200,000 per year.  According to the defendant and confirmed by his brother, both businesses closed as a result of his arrest in the present matter.
>
> **Financial Condition**
>
> 63.   Through his attorney, the defendant was

20

> to provide the probation officer with a
> review of his financial status.  As of the
> date of this dictation, the probation officer
> has not received a financial report from the
> defendant.

> **Defendant's Ability to Pay a**
> **Fine/Restitution.**

> 64.  The defendant is currently incarcerated
> and has no income.  Prior to his arrest, the
> defendant operated two businesses, earning an
> income of between $150,000 and $280,000
> annually.  Based on the defendant's ability
> to generate an income as noted above, it
> would appear he has the ability to pay a
> fine.

Mr. Nuttall made no written objection to this aspect of the PSR,

nor did he make an oral objection at sentencing.  At sentencing,

the Court ruled: "You shall pay a fine to the United States is

the amount of $10,000, payment to begin immediately."

U.S.S.G. § 5E1.2(a) provides that "[t]he court shall impose

a fine in all cases, except where the defendant establishes that

he is unable to pay and is not likely to become able to pay any

fine."  The Sentencing Guidelines also provide that the defendant

bears the burden of proving by a preponderance of the evidence

his inability to pay a fine.  *See United States v. Robinson*, 20

F.3d 1030, 1033 (9th Cir.1994).  In determining whether the

defendant has the ability to pay a fine, the district court must

consider the findings of the Presentence Report and whether the

defendant is represented by assigned counsel.  *Id.*  Further,

before imposing a fine pursuant to § 5E1.2, the district court

must determine whether a defendant has established by a

preponderance of the evidence that he is unlikely to become able to pay any fine in the future. *Id.* at 1034. Citing *United States v. Seminole*, 882 F.2d 441, 443 (9th Cir.1989), the *Robinson* Court noted "[w]e therefore strongly implied that a determination of likely future ability to pay was required at the time of sentencing: if the district court decides at sentencing that the defendant does not have such 'earning capacity' - whether it be education, experience, job skills, or a combination thereof - then the district court may not impose a fine at all." *Id.*

     Arguably, Petitioner has demonstrated the first prong of the *Strickland* test, but he has not demonstrated the second prong, *i.e.,* that Mr. Nuttall's objection to imposition to the $10,000 fine would have resulted in the fine not being imposed. Other than Petitioner's conclusory averment that he no longer has any property or business, he presents no evidence to support his claim that he could not immediately pay the fine or that he cannot pay the fine in the future. Petitioner was represented by retained counsel throughout the criminal proceedings. Evidence was presented at the sentencing hearing that Petitioner secreted $80,000 in cash in a safe at a Las Vegas casino and did not report this asset on his bankruptcy petition (although those monies were later seized). Petitioner provides no explanation for the failure to provide financial information to the Probation Officer for purpose of the Presentence Report. Petitioner stated at sentencing he bought a college fund for his children and that

he has a bank account for his children.   (CT Oct. 10, 2007 at 40:6-7).   Petitioner stated during sentencing:

> This is what's left of me right here, Your Honor.  Right here.  My business gone.  My truck stop gone.  My oil company is gone. And declare to this court that the reason I filed bankruptcy because my ex-wife and her attorneys were coming to me as crazy.  And I need the future to make sure the oil company get paid.  That's my reason for filing bankruptcy.  I want their oil refineries to get paid so I'll have a future in the future.
>
> Right here.  I'll be lucky if I can sell newspaper when I remedy all this problem I have.

(CT Oct. 10, 2007 at 43:12-22).   Petitioner has not demonstrated that he did not possess the earning capacity by way of his job skills and experience making it unlikely that he will be unable to pay the fine in the future.

Petitioner's motion on this ground is DENIED.

<u>CONCLUSION</u>

For the reasons stated:

1.   Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED;

2.   The Clerk of the Court is directed to ENTER JUDGMENT FOR RESPONDENT and to close this case.

IT IS SO ORDERED.

Dated: __June 8, 2009__                    _____/s/ Oliver W. Wanger_____
                                           UNITED STATES DISTRICT JUDGE